OMAHA HEALTH FACILITIES, INC., APPELLANT, V. DEPARTMENT OF HEALTH, STATE OF NEBRASKA, APPELLEE.

439 N.W.2d 78

Filed April 27, 1989.   No. 87-553.

James W.R. Brown and Thomas R. Brown, of Fitzgerald & Brown, and Lem T. Jones, Jr., of Jones & Lehr, P.C., for appellant.

Robert M. Spire, Attorney General, and Marilyn B. Hutchinson for appellee.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and BURKHARD and WITTHOFF, D. JJ.

HASTINGS, C.J.

Omaha Health Facilities, Inc. (applicant), has appealed from the judgment of the district court, which affirmed the order of the Certificate of Need Appeal Panel. That panel had affirmed the action of the Certificate of Need Review Committee, which accepted the recommendation of the Department of Health of the State of Nebraska (department) in denying applicant's request for a certificate of need to build a nursing care facility in Douglas County.

Assigned as error is the action of the district court in (1) holding that the formula set out in Neb. Admin. Code tit. 182, ch. 2, § 006.09 (1983) provides the need calculation for long-term hospital beds as well as for skilled nursing facilities and intermediate-care facility beds, (2) failing to hold that the provisions of the Nebraska State Health Plan 1982-1987 (Neb. Dept. of Health 1982) control when there is a conflict between its provisions and the provisions in the regulations, and (3) failing to hold that the need for the facility was shown.

An appeal from a judgment of the district court affirming a decision of the Certificate of Need Appeal Panel is reviewed in this court de novo on the record. See, *Department of Health v. Columbia West Corp.*, 227 Neb. 836, 420 N.W.2d 314 (1988); Neb. Rev. Stat. § 84-918 (Reissue 1987). However, this does not mean that the court ignores the findings of fact made by the appeal panel and the fact that it saw and heard the witnesses who appeared before it at its hearing. *Department of Health v. Lutheran Hosp. & Homes Soc.*, 227 Neb. 116, 416 N.W.2d 222 (1987).

In an appeal of a decision to deny a certificate of need, the person requesting the appeal shall bear the burden of proving that the project meets the applicable criteria. Neb. Rev. Stat. §§ 71-5848 and 71-5865 (Reissue 1986).

The applicant's proposed facility is a 180-bed long-term-care facility to be located near 180th and Dodge Streets in Douglas County. The application sought certification for skilled nursing and intermediate-care beds. The facility would serve persons

located within 30 minutes' travel time of the location.

Applications for health care facilities are controlled by the Nebraska Health Care Certificate of Need Act, Neb. Rev. Stat. §§ 71-5801 et seq. (Reissue 1986). Section 71-5802 provides as follows:

> The Legislature hereby declares that it is the purpose of sections 71-5801 to 71-5872 to conserve the limited health care resources of personnel and facilities in order to provide quality health care to all citizens of the state, to minimize unnecessary duplication of facilities and services, to encourage development of appropriate alternative methods of delivering health care, to promote wherever appropriate a more competitive health care delivery system, to encourage the provision of high-quality health care which is available and accessible to all citizens of the state, and to maximize the effectiveness of expenditures made for health care.

No one is permitted to construct or otherwise acquire a health care facility without having first applied for and received the necessary certificate of need. § 71-5830. The Nebraska Department of Health is required to adopt regulations to prescribe the form and manner of consideration of applications for certificates of need. § 71-5836. Provisions are made under the authority of § 71-5842 for the creation of a Certificate of Need Review Committee. It is the responsibility of this committee to "[m]ake the decision with respect to each application for a certificate of need," § 71-5844, and before issuing a certificate of need, it shall consider the need for the health care facilities, the services related to health care facilities, and the clinical equipment as projected in various state plans. § 71-5858. The department is also required to adopt rules to provide criteria for the need to be served by health care facilities that the particular population has. § 71-5853. See, also, 182 Neb. Admin. Code, ch. 2, § 005.01A (1983), which provides that an applicant "must establish that there is an unmet need for health care services for a specific population" in order to obtain a certificate of need.

Also involved in this case is the Nebraska State Health Plan 1982-1987 (Neb. Dept. of Health 1982), which was adopted on

November 19, 1982, under the authority of federal health law. See § 71-5852. Such plan is an attempt to define health policy for the State of Nebraska, and as provided by the foregoing section, the department may incorporate as part of its rules and regulations any part of such plan. This section further provides that such rules and regulations shall provide criteria for the relationship of the health services being reviewed to the state health plan, *"but exceptions to the state health plan shall be made when justification is shown by a preponderance of the evidence."* (Emphasis supplied.) § 71-5852.

Any action of the Certificate of Need Review Committee in issuing or denying a certificate of need may be appealed to a Certificate of Need Appeal Panel, which, following a hearing, shall issue a final written decision affirming or reversing the determination of the Certificate of Need Review Committee. §§ 71-5859 to 71-5866. That decision is subject to judicial review as provided by Neb. Rev. Stat. §§ 84-917 to 84-919 (Reissue 1981 & Cum. Supp. 1986). See § 71-5866.

As previously stated, the application has been denied at all levels and is here on appeal for a de novo review of the record.

At the heart of this controversy is the procedure to be employed in arriving at the health care needs in a particular community. The formulas provided in both the state health plan and the regulations appear to be the same. Quoting from the regulations, the following appears:

> No long-term care beds may be added if the number of beds in the applicant's service area exceeds the need for that area determined by aggregating the bed needs estimated for each sex and age group from the following methodology:

$$\text{Long-Term Bed Need} = \frac{\text{Population} \times \text{Utilization Rate Goal}}{\text{Minimum Occupancy Rate Goal}}$$

Neb. Admin. Code tit. 182, ch. 2, § 006.09C (1983). That formula was originally established in the Nebraska State Health Plan 1982-1987, *supra* at V-433, where it is stated:

> The methodology for estimating the need for long-term care beds was approved by the SHCC and applied by two

of the three health systems agencies. In this approach bed need is estimated on the basis of the following formula.

$$\text{Long-Term Bed Need} = \frac{\text{Population x Utilization Rate Goal}}{\text{Minimum Occupancy Rate Goal}}$$

The utilization rate goal is a statistically produced figure which is an estimate of the number of people within a given age and sex group per thousand residents of a population area who will be needing long-term-care beds. The minimum occupancy rate goal is an arbitrarily fixed percentage figure of desirable occupancy, in this case 90 percent. In other words, the department, through the use of health economists, statisticians, and others, has concluded that in order to have a sufficient number of beds available at any one time, the total available beds shall approximate 111 percent of the projected daily need. For example, if the population is 3,000 and the utilization rate goal is 300, applying the formula, long-term bed need will be 3 (thousand) × 300 = 900 divided by .90 (90 percent minimum occupancy rate goal) and will result in a figure of 1,000.

However, the problem arises because of the applicant's insistence that a 10-percent add-on figure for long-term patients in hospitals must be utilized in arriving at actual projected bed needs. This comes from language in the health plan which reads:

> An estimate of residents in hospital long-term care units must be made to fully account for residents of long-term care units. Hospital long-term care units have generated approximately 10 percent of total long-term care patient days, but the percent varies by area. Residents in hospital long-term care beds must be accounted for when establishing total bed needs.

Nebraska State Health Plan 1982-1987, V-437, V-440 (Neb. Dept. of Health 1982).

On the other hand, the department points to language further on which states:

> Also, the breakdown between nursing home and hospital long-term care beds should not be taken too literally. : . .
> The Greater Nebraska Health Systems Plan has

> recommended that swing beds be examined if the nursing homes are full and the area hospital(s) is (are) operating below capacity - this would be the preferred option to new nursing home construction. This reinforces the position that total bed needs in Table 5-123 should be emphasized rather than the breakdown between nursing homes and hospital long-term care beds.

*Id*. at V-440.

Obviously, in our example, if the 10-percent add-on were employed, the long-term bed need for 900 users would be 1,100 rather than the 1,000 as originally calculated; i.e., $1,000 \times 1.1 = 1,100$. The applicant argues that this must be done because § 71-5852 requires that the department shall "provide criteria for . . . [t]he relationship of the health services being reviewed to the state health plan . . . ."

The regulations make no mention of the use of a 10-percent add-on figure for hospital patients. Thus, the department argues, the regulations control because as provided at 182 Neb. Admin. Code, ch. 2, § 005.01B (1983): "Projections in section 006 of these regulations shall take priority over those in the state health plan in the case of conflicts between those documents."

Applicant contends that the plan was adopted before the regulations were promulgated. However, important to the court is that portion of § 71-5852 which reads, "but exceptions to the state health plan shall be made when justification is shown by a preponderance of the evidence."

Stephen Frederick, a health economist employed by the department and who authored the plan, testified that the 10-percent ratio of hospital long-term beds in use and those long-term beds of nursing homes was utilized to predict an accurate figure for the *state as a whole*. However, he said this figure did not relate directly to the individual service areas such as the one with which we are here concerned. The add-on figure was used to get at a base statewide and was not carried over into the utilization goals of the regulations.

The decision on the part of the department not to use the 10-percent add-on in the regulations was supported by a preponderance of the evidence. The procedure provided for in

the regulations takes precedence over the plan and is applicable.

Having concluded that the 10-percent add-on figure is not to be employed in applying the formula for determining long-term bed need, it is only necessary to plug in the projected bed use figures without adding an additional figure for hospital residents, and apply the .90 divisor. In making our computations, we have used the data provided by the applicant which are more favorable to it than those of the department. Those figures were provided by Donnelley Marketing Services, by the University of Nebraska, and by the U.S. Census Bureau. Donnelley population projections reveal a projected bed use for Douglas County in 1990 of 2,951; the University of Nebraska population projections for the same time and area produce a projected bed use of 2,558; and the U.S. revised census figures estimate a projected bed use of 3,122. Dividing each figure by .90 results in long-term bed needs of 3,279, 2,842 and 3,469, respectively. Comparing these figures with the number of beds actually available in 1985 of 3,399, which figure is not in dispute, either there is an excess of 120 or 557 beds, or, according to the revised census estimate, there is a shortage of 70 beds. However, to grant the present application would result in available beds in excess of the projected needs in any event.

The judgment of the district court is correct and is affirmed.

AFFIRMED.